IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MAURICE D. DIXON,

    Plaintiff,

    v.                                      CIVIL NO.: WDQ-12-0569

SHASTA BEVERAGES, INC., et al.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Maurice D. Dixon sued Shasta Beverages, Inc. ("Shasta") and Mildred Kirts for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2002 et seq. ("Title VII"), and Maryland common law claims. For the following reasons, Shasta and Kirts's ("the defendants") motion to dismiss or for summary judgment will be construed as a motion for summary judgment, granted in part, and denied in part.

I.  Background[1]

On January 5, 2010, Dixon, an African-American man, began working at Shasta's Baltimore plant during the night shift as a mixer/blender through Lab Support,[2] a temporary employment

---

[1] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[2] Although the parties refer to Lab Support as Dixon's employer, Dixon's employment agreement with the temporary agency was with

agency. ECF No. 12-1 Ex. 2 ¶ 8, 3 ¶¶ 3-4. Shasta supplied the equipment on which Dixon worked and provided him with training and required him to sign a training log. ECF No. 12-1 Ex 2 ¶¶ 9, 16-17. Under his agreement with Lab Support, at Shasta Dixon was supervised by Bhavini Patel, a Shasta employee. ECF No. 12-1 Ex. 3 ¶ 4, Ex. 4 at 2. Dixon was paid an hourly rate by Lab Support, which received from Shasta a payment that included Dixon's withholdings and benefits. ECF Nos. 9-5, 12-1 Ex. 3 ¶ 3, 15-3 at 1. Dixon believes that his position was "temporary-to-hire," conditioned on satisfactory performance. ECF No. 12-1 Ex. 3 ¶¶ 21-22.[3]

Shasta determined Dixon's hours and work assignments, and required him to follow its lunch and break policies. ECF No. 12-1 Ex. 2 ¶ 11-13. He was required to request time off from Lab Support. ECF No. 12-1 Ex. 4 at 2. Dixon recorded his time and assignments with Shasta. ECF No. 12-1 Ex. 2 ¶¶ 10-11. He also reported his time to Lab Support. ECF No. 15-5

One of Dixon's coworkers at Shasta was Kirts, a Caucasian female, Shasta employee who worked the morning shift. *See* ECF No. 9-9 ¶ 8; 12-1 Ex. 1 at 7. Kirts was not a supervisor, ECF

---

On Assignment, Inc., of which Lab Support is a division. *See* ECF No. 12-1 Ex. 4. For the sake of consistency and clarity, the Court will refer to Lab Support.

[3] Shasta plant manager Michael Valenzia swore that Dixon had no contract with Shasta and was Lab Support's employee at all times. ECF No. 9-9 ¶¶ 6-7.

No. 9-9 ¶ 3, but gave Dixon "instructions on several occasions." ECF No. 12-1 Ex. 2 ¶ 20. For about six months, Kirts subjected Dixon to "repeat and constant verbal profanity, filthy overtones, finger pointing, slamming of manuals[,] and violence" when they interacted. ECF No. 12-1 Ex. 3 ¶ 6. Dixon complained about Kirts's treatment to Patel, who took no action. ECF No. 2-1 Ex. 3 ¶ 7.

On August 16, 2010, when Kirts arrived for her shift, Dixon had not finished sanitizing or disposing of beverage concentrate containers. ECF NO. 9-6 at 1. She yelled to Dixon, "You are on damn overtime; you need to take care of these containers." ECF No. 12-1 Ex. 3 ¶ 12. Kirts then threw the concentrate containers at Dixon, who moved aside and was not struck. Id. Kirts left the room, but immediately returned and kicked boxes at Dixon. Id. at ¶13. Dixon avoided the boxes. Id. According to company records, before this incident, no formal complaints against Kirts had been filed, and she had never been accused of "physical aggression in the workplace." ECF No. 9-9 ¶ 9. Feeling unsafe, Dixon did not return to Shasta after August 16, 2010. ECF No. 12-1 Ex. 3 ¶14. Kirts pled guilty to a charge of second degree assault in the Circuit Court for Baltimore City. ECF No. 9-7 at 8.

On February 16, 2011, Dixon filed with the Equal Employment Opportunity Commission ("EEOC") an unsworn Intake Ques-

3

tionnaire describing Kirts's treatment of him. ECF No. 12-1 Ex. 1. Dixon stated that his employer, Shasta, and a lead lab tech at Shasta had discriminated against him on the basis of race. *Id.* at 1-2. Dixon described Kirts's conduct toward him and the August 16 incident. *Id.* at 3, 7-8. He said that he "want[ed] to file a charge of discrimination" and harassment, and authorized the EEOC to investigate his charges. *Id.* at 4, 6.

On March 2, 2011, the EEOC sent Shasta a Notice of Charge of Discrimination that it had "received documentation constituting a minimally sufficient charge of discrimination" and listing a charge number. ECF No. 15-1. On August 1, 2011, Dixon filed with the EEOC, under penalty of perjury, a formal charge of race discrimination. ECF No. 9-8. The EEOC received the charge on August 10, 2011. *Id.* (date stamp).

On February 22, 2012, Dixon filed this action. ECF No. 1.[4] On April 25, 2012, the defendants moved to dismiss the complaint for failure to state a claim. ECF No. 9. Dixon opposed the motion. ECF No. 12.

---

[4] Dixon's claims were: race discrimination in violation of Title VII (counts 1 and 2, against Shasta), battery (count 3, against Kirts), negligence (count 4, against Kirts), negligent hiring and supervision (count 5, against Shasta), and breach of contract (count 6, against Shasta).

4

II. Analysis

    A.   Rule 12(d) Conversion

The defendants captioned their motion a "Motion to Dismiss," relied on documentary evidence, stated in a footnote that the motion can be considered one for summary judgment, and, in conclusion, requested dismissal for failure to state a claim or, alternatively, summary judgment. ECF Nos. 9; 9-1 at 6 n.8, 14. In his opposition, Dixon acknowledged that the motion may be construed as one for summary judgment and attached exhibits of his own. ECF No. 12 at 1.

Under Fed. R. Civ. P. 12(d), if a motion to dismiss under Fed. R. Civ. P. 12(b)(6) presents evidence that the Court considers, the Court must treat it as a summary judgment motion. The parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d) so the parties know that the Court is converting the motion to dismiss into one for summary judgment. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). The Court need not inform parties of the obvious: attaching supplementary materials to a motion to dismiss opens the door for conversion. *Laughlin v. Metro. Wash. Airports Auth.* 149 F.3d 253, 261 (4th Cir. 1998). Here, Dixon was clearly aware of the possibility of conversion as he acknowledged that possibility and relied upon his own exhibits in his opposition. *See* ECF No. 12 at 1.

The only objection Dixon has to conversion is on the contact claim; he believes that treating the motion as one for summary judgment on that claim before discovery is prejudicial.[5] ECF No. 12 at 12. Dixon has not identified the prejudice. *Id.*

"Generally, a district court must refuse summary judgment wh[en] the nonmoving party has not had the opportunity to discover information that is essential to [his] opposition." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (internal quotation marks and citation omitted). In such a case, the nonmoving party must comply with Fed. R. Civ. P. 56(d) and "set out the reasons for discovery in an affidavit." *Id.*[6]

Dixon knew that the motion could be considered one for summary judgment. *See* ECF No. 12 at 1. Dixon has not shown that considering the motion as one for summary judgment would be prejudicial. ECF No. 12 at 12. Dixon has not filed a Rule 56(d) affidavit, discussed that rule in his response, or stated that he has been unable to obtain facts essential to opposing

---

[5] Dixon's evidence, such as his affidavit, ECF No. 12-1 Ex. 3, and his employment agreement with Lab Support, ECF No. 12-1 Ex. 4, is relevant to the contract claim.

[6] "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (internal quotation marks omitted). "[S]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." *Id.* at 246-47 (quotation marks omitted).

the defendants' motion. *See id.* He has not met Rule 56(d)'s requirements. *See Harrods Ltd.*, 302 F.3d at 244. Accordingly, treating the defendants' motion as one for summary judgment is fair to Dixon.

B.   Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually

---

[7] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

7

unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

C. Title VII Claims

The defendants contend that they are entitled to summary judgment on Dixon's Title VII claims because: 1) the claims are time barred, and 2) Shasta was not Dixon's employer. ECF No. 9-1 at 6-7.

1. Timeliness of Dixon's EEOC Charge

The defendants contend that Dixon's EEOC charge was not filed until August 10, 2011, more than 300 days after the August 16, 2010, incident. ECF No. 9-1 at 6. Dixon contends that the August charge relates back to the intake form he filed on February 16, 2011. ECF No. 12 at 3.

A claimant in Maryland, a deferral state,[8] must file a discrimination charge with the EEOC within 300 days after the allegedly unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1); *Williams v. Giant Food, Inc.*, 370 F.3d 428 (4th Cir. 2004).

---

[8] Deferral states have "a State or local agency with authority to grant or seek relief from [unlawful employment] practice[s] or to institute criminal proceedings with respect thereto." 42 U.S.C. § 2000e-5 (e)(1). "The Baltimore Community Relations Commission . . . is one such local agency with authority over employment discrimination cases." *Borders v. Policy Studies, Inc.*, No. RDB-07-638, 2008 WL 3200725, at *4 (D. Md. Aug. 5, 2008).

An EEOC intake questionnaire may be considered a "charge" of discrimination for purposes of the limitations period if it provides "the information required by the regulations" and is "reasonably construed as a request for the [EEOC] to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).[9]

A charge is sufficient if it is in writing, sworn, and "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b); see 42 U.S.C. § 2000e-5. An unsworn document that satisfies the other charge requirements can be cured by a later sworn charge. 29 C.F.R. § 1601.12(b). The sworn charge relates back to the filing date of the unsworn charge. *See id.*; *see also Edelman v. Lynchburg Coll.*, 535 U.S. 106, 118 (2002) (upholding relation back).

Here, the intake questionnaire contains all the information required by the regulations: Dixon named Kirts, Patel, and Shasta; checked the racial discrimination box; and described the August 16 incident and ongoing harassment. *See* ECF No. 12-1 Ex. 1. The EEOC gave Shasta a Notice of Charge of Discrimination

---

[9] Although *Holowecki* was an Age Discrimination in Employment Act case, it has been followed in Title VII cases. *See, e.g., Grice v. Balt. Cnty.*, Civil No. JFM 07-1701, 2008 WL 4849322, at *4 n.3 (D. Md. Nov. 5, 2008) (collecting cases).

with a charge number and a statement that the Intake Questionnaire "constitut[ed] a minimally sufficient charge of discrimination." ECF No. 15-1. Shasta was informed of the general nature of the actions or practices. The Intake Questionnaire was a charge.[10] See 29 C.F.R. § 1601.12(b).

Dixon's charge was timely because his formal, sworn charge relates back to the February 16, 2011 questionnaire. February

---

[10] The defendants contend that the Intake Questionnaire was not a charge; they rely on *Valderrama v. Honeywell Technology Solutions, Inc.*, 473 F. Supp. 2d 658 (D. Md. 2007). ECF No. 15 at 7. In *Valderrama*,

> The gist of [plaintiff's] complaint [in the questionnaire was] that unidentified persons made comments about her. She fail[ed] to describe those comments, state who made them, or connect them to a discharge, a demotion, or harassment. She also fail[ed] to connect the comments to racial discrimination, national origin discrimination, age discrimination or retaliation.

Id. at 663. The court held that Valderrama's questionnaire was not a charge under 29 C.F.R. § 1601.12. The EEOC had not informed Valderrama's employer or assigned a charge number. *Valderrama*, 473 F. Supp. 2d at 663 n.8. As discussed above, Dixon's questionnaire included the necessary information. See also *Carson v. Cudd Pressure Control, Inc.*, 299 F. App'x 845, 848 (10th Cir. 2008)(filing was a charge when claimant stated that he expected "back pay, front pay, [and] reinstatement of stock incentives," thereby demonstrating his "intent to seek EEOC assistance in enforcing his perceived rights"); *Palmer v. Sw. Airlines Co.*, No. 08 C 6158, 2009 WL 3462043, *6-7 (N.D. Ill. Oct. 23, 2009)(intake questionnaire, which included statement that it would be considered a charge if it was the only written statement filed, would be construed by court as timely charge of discrimination when claimant identified witnesses who would corroborate her story and stated that she would provide the EEOC with additional information from her arbitration transcriptions "presumably to assist in its investigation.").

16, 2011, is less than 300 days after August 16, 2010. Under 29 U.S.C. § 2000e-5(e)(1), Dixon's EEOC charge timely. *See Edelman*, 535 U.S. at 118.

2. Dixon's Employment Status with Shasta

The defendants next contend that Dixon has no Title VII claim against Shasta because he was employed by Lab Support not Shasta. ECF No. 9-1 at 7. Dixon claims that his relationship with Shasta was employment. ECF No. 12 at 4-5.

Under Title VII an "employee" is "an individual employed by the employer." 42 U.S.C. § 2000e(f). "[T]his circular definition" leaves "the term 'employee' essentially undefined insofar as an employee is to be distinguished from an independent contractor." *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 259 (4th Cir. 1997).

"Resolution of factors as 'to whether an employment relationship or an independent contractor relationship as created' is 'a question of law.'" *Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 313 (4th Cir. 2001) (quoting *Cilecek*, 115 F.3d at 261). The Court applies a "hybrid test" to decide whether a worker is an employee, considering (1) whether the hiring party controls the workers, and (2) "the degree of economic dependence of the worker on the putative employer." *Bender v. Suburban Hosp.*, 998 F. Supp. 631, 634 (D. Md. 1998) (citing *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 982 (4th

Cir. 1983)). The control factor is the most important. *Garrett*, 721 F.2d at 982. Economic dependence factors include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by the time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.*

Here, there is no genuine dispute of material fact. Shasta controlled many aspects of Dixon's work. Shasta set Dixon's shift and work assignments and dictated his work hours. ECF No. 12-1 Ex. 2 ¶¶ 11, 14. Dixon's agreement with Lab Support stated that he would be directed by Shasta, and Patel, a Shasta employee, directly supervised Dixon. *Id.* at ¶ 20; ECF No. 12-1 Ex. 4 at 2. Lab Support provided no direction to Dixon regarding his work. ECF No. 12-1 Ex. 2 ¶ 21. Dixon was required to conform to Shasta's lunch and break policies and could not leave the premises until relieved. *Id.* at ¶ 12-13. Shasta provided the equipment on which Dixon worked. *Id.* at ¶ 16. Shasta supplied Dixon with training and required him to sign a training log. *Id.* at ¶¶ 9, 16-17.

Some evidence, however, indicates a lack of control by Shasta. Although Dixon reported his time like other Shasta employees, *id.* at ¶ 10, he also reported it to Lab Support. ECF No. 15-5. Dixon requested time off from Lab Support. ECF No. 12-1 Ex. 4 at 2. Dixon's written agreement was with Lab Support not with Shasta. ECF Nos. 9-9; 12-1 Ex. 4.

Several economic dependence factors indicate an employment relationship. Shasta provided the equipment used by Dixon and the plant where he worked. ECF No. 12-1 Ex. 2 ¶ 16. Dixon was paid on an hourly basis. ECF Nos. 9-5; 12-1 ¶ 3. The intention of the parties was for a temporary-to-hire position. ECF No. 12-1 Ex. 3 ¶¶ 21-22.

Other factors indicate that Dixon was an independent contractor. Dixon worked for Shasta for less than eight months. ECF No. 12-1 Ex. 3 ¶¶ 3, 12, 14. Lab Support paid all benefits and was responsible for government withholding. ECF No. 15-3.

These facts indicate that Shasta was Dixon's employer. Shasta's hourly payment of Dixon, its provision of equipment and training, and control of his hours and breaks indicate that he was an employee.[11] The factual dispute about Dixon's employment

---

[11] *See Callicutt v. Pepsi Bottling Gp. Inc.*, No. CIV. 00-95DWFAJB, 2002 WL 992757 at *7-8 (D. Minn. May 13, 2002) (finding employment relationship with temporary employees where Pepsi provided equipment, set work schedule, and directly supervised); *Freeman v. Kansas* 128 F. Supp. 2d 1311, 1315 (D. Kan. 2001) (finding employment relationship with temporary employee where

by Shasta cannot be resolved on summary judgment. The defendants are not entitled to summary judgment on the Title VII claims.

D.   Battery

The defendants contend that Dixon cannot succeed on his battery claim because there was no intentional touching. ECF No. 9-1 at 8.  Dixon further appears to concede this argument by stating merely "No comment."  ECF No. 12 at 5.

In Maryland, a battery requires an intentionally harmful or offensive contact.  *Saba v. Darling*, 575 A.2d 1240, 1242 (1990). Kirts threw containers and kicked boxes at Dixon, but Dixon admits that he was not hit.  ECF No. 12-1 Ex. 3 ¶¶ 12-13.  As there was no touching, there was no battery.  *See Saba*, 575 A.2d at 1242.  Summary judgment will be granted on this claim.

E.   Kirts's Negligence

The defendants contend Kirts did not owe a duty to Dixon and Dixon suffered no harm as his only injuries are economic and emotional.[12]  ECF No. 9-1 at 9.  Dixon counters that Kirts owed

---

Kansas trained, supervised, dictated time, and furnished location and equipment); *cf. West v. MCI Worldcom, Inc.*, 205 F. Supp. 2d 531, 540-41 (E.D.V.A. 2002) (training may indicate employment relationship).

[12] The defendants also argue that both negligence claims are barred by Maryland's Workers' Compensation Act, Md. Code Ann. Lab. & Empl. § 9-101 *et seq.*, and preempted by Title VII.  ECF No. 9-1 at 11-13.  Because the Court will grant summary judgment on the negligence claims on other grounds, it does not reach these arguments.

him a special duty because of her status as a senior coworker. ECF No. 12 at 6. There is no evidence of emotional injury before Court; the Court will consider only the alleged economic injury, Dixon's resignation.

To prevail upon a claim of negligence, the plaintiff must show that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the plaintiff suffered actual loss, and (4) the loss was proximately caused by the breach. *Rosenblatt v. Exxon Co., USA*, 642 A.2d 180, 188 (Md. 1994).

A person must "exercise due care to avoid unreasonable risk of harm to others." *Moran v. Faberge, Inc.*, 332 A.2d 11, 15 (Md. 1975). When the risk is only economic loss, an "intimate nexus" is required between the parties for tort liability. *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 760 (Md. 1986). When "the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability." *Id.*

Kirts created a risk of physical injury by kicking and throwing the containers at Dixon. ECF No. 12-1 Ex. 3 ¶¶ 12-13. Thus, the standard negligence duty is applicable. *See Jacques*, 515 A.2d at 760.

Dixon lost his income--an economic loss--when he resigned after the August 16 incident. *See* ECF No. 12-1 Ex. 3 ¶ 14. Kirts had no duty to avoid or prevent economic loss to Dixon.

The foreseeable danger of throwing boxes was physical injury--not resignation of employment.[13]

The connection between the wrongful conduct and the alleged injury is also tenuous: Dixon chose to resign, rather than seek other relief. Cf. *Pittway Corp. v. Collins*, 973 A.2d 771 (Md. 2009) (citing Restatement (Second) of Torts § 442)). Dixon's resignation was unforeseeable and only tenuously connected with Kirts's negligence. See *Jacques*, 515 A.2d at 760.

Dixon's argument that Kirts owed him a special duty is unavailing. Valenzia swore that Kirts was not a supervisor and had limited opportunities to interact with Dixon because they generally worked different shifts. ECF No. 9-9 ¶¶ 3, 8. That Kirts gave Dixon "instructions on several occasions," ECF No. 12-1 Ex. 2 ¶ 20, does not create a genuine dispute of material fact. Occasionally instructing a coworker does not create a special relationship with a heightened duty.[14]

As Kirts had no duty to avoid this kind of economic loss, she cannot be liable to Dixon for that injury. Summary judgment will be granted on this claim.

---

[13] Cf. *El-Meswari v. Wash. Gas Light Co.*, 785 F.2d 483, 494 (4th Cir. 1986) (McMillan, J., concurring in part and dissenting in part) (describing danger of physical injury from thrown objects).

[14] Cf. Restatement (Second) of Torts §§ 314-320 (listing special duty rules); see also *Barclay v. Briscoe*, 47 A.3d 560, 575 (Md. 2012) (noting Maryland's adoption of the Restatement duty rules).

E. Negligent Hiring and Supervision

Shasta contends that the negligent supervision claim fails because it had no notice of any prior acts of violence by Kirts, so any breach of its duty to Dixon did not proximately cause Dixon's harm. ECF No. 9-1 at 10. Dixon argues that he told Patel about the harassment and that Shasta's failure to stop the harassment led to violence. ECF No. 12 at 7.

To prove negligent hiring or supervision, a plaintiff must show that (1) his "injury was caused by the tortious conduct of a coworker," (2) "the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type," (3) "the employer failed to use proper care in selecting, supervising or retaining that employee," and (4) "the employer's breach of its duty was the proximate cause" of the injury.[15]

Valenzia swore that Kirts had "never before been the subject of any formal complaint or been accused of physical aggression in the workplace." ECF. No. 9-9 ¶ 9. Dixon swore that he had reported to Patel, Kirts's "repeat and constant verbal profanity, filthy overtones, finger pointing, slamming of manuals, and violence when addressing and interacting with

---

[15] *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996) (citing *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978).

[him]."  ECF No. 12-1 Ex. 3 ¶6-7.  Dixon does not describe this violence.[16]  From Dixon's reports about Kirts's behavior, Shasta was, at most, on notice that Kirts might use profanity and filthy overtones, point her finger, and slam manuals at Dixon.  A criminal assault with containers "filled with flammable residue,"[17] is far different from profanity and "unprofessional gestures."[18]  *Cf. Baker v. Booz Allen Hamilton, Inc.*, 358 F. App'x 476, 483 (4th Cir. 2009).  Dixon's report about Kirts's prior behavior, even if harassing, is insufficient to show that Shasta knew or should have known that Kirts would engage in a significantly elevated level of violence and cause Dixon to quit.  *Cf. Baker*, 358 F. App'x at 483.  As Dixon has not identified evidence that Shasta knew or should have known about Kirts's violence, the defendants are entitled to summary judgment on this claim.

F.   Breach of Contract

The defendants contend that Dixon has not stated a breach of contract claim because he has identified no contract.  ECF No. 9-1 at 13.  Dixon argues that Shasta contracted to provide

---

[16] In his letter to Patel that he attached to his EEOC questionnaire, Dixon refers to approaching her before August 16 concerning "profanity, filthy tone of voice, and unprofessional gestures (finger-pointing, imposing body language, slamming manuals)."  ECF No. 12-1 Ex. 1 at 6.  Dixon does not refer to any prior violence by Kirts.

[17] ECF No. 12-1 Ex. 3 ¶ 12; *see* ECF No. 9-7.

[18] ECF No. 12-1 Ex. 1 at 6.

him with a safe workplace and "numerous [other] contractual obligations."  ECF No. 12 at 12

To succeed on a breach of contract claim, the plaintiff must prove "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Dixon has not identified a contractual duty to protect him from the unexpected acts of other workers.  Dixon swore,

> I had contractual obligations to Shasta and Shasta had contractual obligations to me . . . .  Shasta had an obligation to provide me with safety equipment, a safe environment with respect to hazardous materials, to train me when necessary, and to provide a professional environment to which I would contribute my own professionalism.

ECF No. 12-1 Ex. 3 ¶ 16.  Dixon has no evidence that Shasta promised to do more than protect its workers from hazardous materials.[19]

---

[19] Dixon also argues that he was a third party beneficiary of an agreement between Shasta and Lab Support.  ECF No. 12 at 11-12. A third party beneficiary is not a party to a contract, but can bring suit to enforce it.  *Dickerson v. Longoria*, 995 A.2d 721, 741-42 (Md. 2010).  To qualify as a third party beneficiary, the individual must show that it was "intended for his benefit" and "the parties intended to recognize him as the primary party in interest."  *Id.* at 741 (internal quotation marks and alteration omitted).  Dixon has produced no evidence of any agreement between Shasta and Lab Support concerning a safe working environment or intent that he to be a beneficiary of such an agreement.

Without a contractual obligation, Dixon cannot succeed on his claim. See *Taylor*, 776 A.2d at 651. Summary judgment will be granted.

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss or for summary judgment will be granted in part and denied in part.

\_\_\_\_10/5/12_____        \_\_\_\_/s/_____
Date                                                William D. Quarles, Jr.
                                                    United States District Judge