IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MAURICE D. DIXON,

    Plaintiff,

       v.                        CIVIL NO.: WDQ-12-0569

SHASTA BEVERAGES, INC., *et al.*,

    Defendants.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

MEMORANDUM OPINION

Maurice D. Dixon sued Shasta Beverages, Inc. ("Shasta") and Mildred Kirts for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Maryland common law claims. On October 5, 2012, the Court granted summary judgment for Kirts on all claims and for Shasta on all but the Title VII claims. Pending is Dixon's motion to amend the scheduling order and the complaint to assert an additional cause of action against Kirts. For the following reasons, the motion will be denied.

I.  Background[1]

On January 5, 2010, Dixon, an African-American man, began working at Shasta's Baltimore plant during the night shift as a

---

[1] The facts are from the summary judgment record. *See* ECF No. 17. The proposed amended complaint does not allege any new incidents. *See* ECF No. 23.

mixer/blender; he was hired through a temporary employment agency.  ECF No. 12-1 Exs. 2 ¶ 8, 3 ¶¶ 3-4.

One of Dixon's coworkers at Shasta was Kirts, a Caucasian female, Shasta employee who worked the morning shift.  *See* ECF Nos. 9-9 ¶ 8, 12-1 Ex. 1 at 7.  Kirts was not a supervisor, ECF No. 9-9 ¶ 3, but gave Dixon "instructions on several occasions." ECF No. 12-1 Ex. 2 ¶ 20.  For about six months, Kirts subjected Dixon to "repeat and constant verbal profanity, filthy overtones, finger pointing, slamming of manuals[,] and violence" when they interacted.  ECF No. 12-1 Ex. 3 ¶ 6.  Dixon complained about Kirts's treatment to his supervisor.  ECF No. 2-1 Ex. 3 ¶ 7.

On August 16, 2010, when Kirts arrived for her shift, Dixon had not finished sanitizing or disposing of beverage concentrate containers.  ECF No. 9-6 at 1.  She yelled to Dixon, "You are on damn overtime; you need to take care of these containers."  ECF No. 12-1 Ex. 3 ¶ 12.  Kirts then threw the concentrate containers at Dixon, who moved aside and was not struck.  *Id.* Kirts left the room, but immediately returned and kicked boxes at Dixon.  *Id.* at ¶ 13.  Dixon avoided the boxes.  *Id.* According to company records, before this incident, no formal complaints against Kirts had been filed, and she had never been accused of "physical aggression in the workplace."  ECF No. 9-9 ¶ 9.  Feeling unsafe, Dixon did not return to Shasta after

August 16, 2010.  ECF No. 12-1 Ex. 3 ¶14.  On October 5, 2010,
Kirts pled guilty and received probation before judgment on a
charge of second degree assault in the Circuit Court for
Baltimore City.  ECF No. 9-7 at 8.

On February 22, 2012, Dixon filed this action.  ECF No. 1.[2]
On April 25, 2012, the defendants moved to dismiss the complaint
or, alternatively, for summary judgment.  ECF No. 9.  On October
5, 2012, the Court granted summary judgment for the defendants
on all but the Title VII claims.  ECF No. 18.

On October 20, 2012, the Court entered a Scheduling Order.
ECF No. 20.  The Scheduling Order set December 7, 2012, as the
deadline for "[m]oving for joinder of additional parties and
amendment of pleadings." *Id*. at 2.  On January 11, 2013, Kirts
was deposed.  *See* ECF No. 24-1.  On February 11, 2013, Dixon
moved to modify the scheduling order so that he could file an
amended complaint, which would add an intentional tortious
interference with economic relations claim against Kirts.  ECF
Nos. 22, 23.  On February 28, 2013, Shasta opposed the motion.
ECF No. 24, and on March 11, 2013, Dixon replied, ECF No. 25.

---

[2] Dixon's claims were: race discrimination in violation of Title
VII (counts 1 and 2, against Shasta), battery (count 3, against
Kirts), negligence (count 4, against Kirts), negligent hiring
and supervision (count 5, against Shasta), and breach of
contract (count 6, against Shasta).

II.  Analysis

Dixon asserts that he has shown good cause to amend the scheduling order and his complaint because evidence relevant to his new claim did not come to light until after the amendment deadline had passed.  ECF No. 22-1 at 2.  Shasta asserts that Dixon has failed to show good cause for the amendment.  ECF No. 24 at 7.

There is tension in the Federal Rules of Civil Procedure over the standard applicable to a motion to amend the complaint when a scheduling order sets a deadline for amendment.  *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).  Rule 15(a)(2) instructs the Court to "freely give leave [to amend] when justice so requires."  The Fourth Circuit has stated that "a motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation marks omitted).

On the other hand, Rule 16(a)(3)(A) requires the Court to issue a scheduling order that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(a)(4).  The Fourth Circuit has clarified that Rule 16(a)(4) governs when the

4

deadline for amendment has passed, holding "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug*, 535 F.3d at 298.

Dixon asserts that he has good cause because during discovery new evidence came to light justifying adding the intentional interference claim against Kirts. ECF No. 22-1 at 2. Under Rule 16(b), good cause exists when "the plaintiff uncover[s] previously unknown facts during discovery that would support an additional cause of action,"[3] and "the moving party has diligently made efforts to meet court imposed deadlines."[4]

Dixon points to four facts discovered at Kirts's deposition: Kirts admitted that (1) she had "receiv[ed] training and [had] knowledge about harassment in the form of verbal abuse," (2) "her interactions with [Dixon] were not always professional," (3) "there was a possibility that she has cursed while speaking to [Dixon]," and (4) "there were at least two other altercations" between Kirts and Dixon. ECF No. 22-1 at 2. He claims that the new facts are probative of Kirts's intent, which was not previously available to him. *See* ECF No. 25 at 5.

---

[3] *Forstmann v. Culp*, 114 F.R.D. 83, 86 n.1 (M.D.N.C. 1987) (*cited in In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429 (table), 1994 WL 118475, at *11 (4th Cir. 1994)).

[4] *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768 (D. Md. 2010).

Dixon's second through fourth new facts are clearly not new evidence.  Each involves conduct between Kirts and Dixon, for which Dixon necessarily was present.  No diligence was required for Dixon to know these facts.  Accordingly, they do not support good cause.  *See CBX Techs., Inc. v. GCC Techs., LLC*, Civ. No. JKB-10-2112, 2012 WL 3038639, at *4 (D. Md. July 24, 2012).

Regardless of whether Dixon could have discovered that Kirts had received harassment training by the amendment deadline, it is not clear what significance this evidence has to the proposed intentional interference claim.  The elements of a claim for intentional interference with an economic relationship are (1) the defendant committed intentional and willful acts, (2) calculated to cause damage to the plaintiff's lawful business, (3) with the unlawful purpose of causing such damage, without right of justification, and (4) that actual damage resulted from those acts.  *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 691 (D. Md. 2001) (*citing Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 269 (Md. 1994)).

Kirts's harassment training is not alleged in the proposed amendment to the complaint.  *See* ECF No. 23.  Further it does not appear to speak to any of the elements of the intentional interference claim, and Dixon has not explained how it does.  This evidence also does not support a finding of good cause.

6

Dixon attempts to justify his late proposed addition of the intentional interference claim by asserting that he previously had only "circumstantial and indirect evidence" of Kirts's state of mind, and her deposition revealed her intent which supported the intentional interference claim.  ECF No. 25 at 5.  Under Dixon's reasoning, a claim with an intent element could almost never be brought before discovery.  Intent "can rarely be established by direct evidence, and must often be proved circumstantially and by inference."[5]  *Laws v. Thompson*, 554 A.2d 1264, 1271 (Md. Ct. Spec. App. 1989) (*quoting Zilg v. Prentice-Hall, Inc.*, 515 F. Supp. 716, 719 (S.D.N.Y. 1981)).  Accordingly, Dixon had no need of direct evidence of Kirts's intent to plead the intentional interference claim; his circumstantial and indirect evidence was sufficient.

Finally, the proposed amendment to the complaint is substantially similar to the original complaint.  *Compare* ECF No. 1 ¶¶ 6, 12-14, 40, *with* ECF No. 23 ¶¶ 2-9.  There are no new allegations supporting a finding of good cause.  Dixon has not demonstrated new evidence supporting an additional cause of action nor the requisite diligence for this late amendment.  *See Tawwaab*, 729 F. Supp. 2d at 768; *Forstmann*, 114 F.R.D. at 86 n.1.  Dixon's motion will be denied.

---

[5] Additionally, the Federal Rules of Civil Procedure require only a general allegation of intent.  *See* Fed. R. Civ. P. 9(b).

III. Conclusion

For the reasons stated above, Dixon's motion for leave to modify the Scheduling Order and file an amended complaint will be denied.

_4/11/13_
Date

_William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge